## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BARTLEY M. MULLEN, JR., individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | |
| v. | |
| RED LION HOTELS CORPORATION and RED LION HOTELS FRANCHISING, INC., | |
| Defendants. | |

## NATIONWIDE CLASS ACTION COMPLAINT

Plaintiff, Bartley M. Mullen, Jr. ("Plaintiff"), individually and on behalf of all others similarly situated, brings this class action against Red Lion Hotels Corporation and Red Lion Hotels Franchising, Inc. (collectively, "Defendants"), alleging violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* and its implementing regulations (the "ADA"), for declaratory and injunctive relief, attorneys' fees, expenses and costs.

## INTRODUCTION

1.      Defendants own, operate, franchise and have the right to control a network of upscale and midscale hotels under the trade names of "Hotel RL" and "Red Lion Hotels", as well as economy hotels under the trade names of "Americas Best Value Inn" and "Knights Inn", among others (referred to as "hotels" throughout).

2.      Defendants represent that they are "focused on delivering [to their] guests a consistent experience with exceptional comfort, quality and service at an affordable rate" at their network of hotels spread across the United States.[1]

3.      Unfortunately, Defendants do not offer the same quality and consistent experience to guests who have disabilities. Defendants fail to offer individuals with disabilities a range of guest room options and amenities that are equivalent to the options and amenities offered to individuals without disabilities, including, but not limited to, the types of guest rooms, the number of beds, and the types of amenities offered. And in many cases, Defendants simply offer no accessible guest rooms at all.

4.      For Defendants' economy hotels, the practical effect of Defendants' failure to offer the same types of guest rooms and amenities to individuals with disabilities as those that are offered to individuals without disabilities is exclusion and a net reduction of budget-friendly transient lodging options for a group of Americans disproportionately affected by low wages and underemployment: "[t]he average annual earned income for an American with disability is $26,487 – 38 percent less than for someone without a disability, according to a 2018 report by the American Institutes for Research. The Labor Department reports that only about 19 percent of people with a disability are employed, compared with nearly 66 percent of people without a disability."[2]

---

[1] Red Lion Hotels Corporation, Annual Report (Form 10-K), at 6 (Mar. 8, 2019) *available at* https://www.sec.gov/Archives/edgar/data/1052595/000105255519000004/rlh12-31x201810k.htm

[2] Joshua Brockman, *At Banks and Fund Firms, Access is Too Often Denied, Blind and Deaf Investors Say*, The New York Times (July 5, 2019), *available at* https://www.nytimes.com/2019/07/05/business/retirement-planning-disabled-deaf-blind.html

5.     But even for guests who are seeking Defendants' higher-end hotels, Defendants only offer guests who have disabilities the most limited guest room options and amenities, reserving their highest-end guest room options and amenities only for guests who do not have disabilities.

6.     In failing to offer accessible rooms and failing to provide accessible rooms with the same options and amenities offered to guests without disabilities, Defendants have engaged in illegal discrimination, excluded and deterred individuals with disabilities from patronizing Defendants' hotels, and denied individuals with disabilities full and equal access to the goods, services, facilities, privileges, advantages, and accommodations that Defendants offer to the public.

7.     Defendants' discrimination violated and continues to violate Title III of the ADA, and unless Defendants are required to change their policies and practices so that Defendants' goods, services, facilities, privileges, advantages, and accommodations are accessible to individuals with disabilities, Plaintiff and the proposed class will continue to be denied full and equal access to Defendants' hotels and will be deterred from using Defendants' hotels.

8.     In accordance with 42 U.S.C. § 12188(a)(2), Plaintiff seeks a permanent injunction requiring that:

a) Defendants change their policies and practices necessary to afford all offered goods, services, facilities, privileges, advantages, and accommodations to individuals with disabilities;

b) Defendants take all steps necessary to bring their hotels into full compliance with the ADA's requirements so that Defendants' hotels' guest rooms, including guest room showers, are fully accessible to, and independently usable by, individuals who use wheelchairs or scooters; and,

c) Plaintiff's representatives shall monitor Defendants' hotels to ensure that the injunctive relief ordered pursuant to this Complaint has been implemented and will remain in place.

9.     Plaintiff's claims for permanent injunctive relief are asserted as class claims pursuant to Fed. R. Civ. P. 23(b)(2). Rule 23(b)(2) was specifically intended to be utilized in civil rights cases where the plaintiff seeks injunctive relief for his or her own benefit and the benefit of a class of similarly situated individuals. To that end, the note to the 1996 amendment to Rule 23 states:

> Subdivision(b)(2). This subdivision is intended to reach situations where a party has taken action or refused to take action with respect to a class, and final relief of an injunctive nature or a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole, is appropriate…. Illustrative are various actions in the civil rights field where a party is charged with discriminating unlawfully against a class, usually one whose members are incapable of specific enumeration.

## THE ADA AND ACCESSIBLE TRANSIENT LODGING

10.     The ADA was signed into law by President George H.W. Bush nearly thirty years ago with the intent to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1).

11.     When the ADA's implementing regulations were revised in 2010, a regulatory impact analysis found that "[s]ome of the most frequently cited qualitative benefits of increased access are the increase in one's personal sense of dignity that arises from increased access and the decrease in possibly humiliating incidents due to accessibility barriers. Struggling [to use a non-accessible facility] negatively affect[s] a person's sense of independence and can lead to humiliating accidents, derisive comments, or embarrassment. These humiliations, together with feelings of being stigmatized as different or inferior from being relegated to use other, less comfortable or pleasant elements of a facility . . . all have a negative impact on persons with disabilities." *Final Regulatory Impact Analysis of the Final Revised Regulations Implementing Titles II and III of the ADA, Including Revised ADA Standards for Accessible Design*, U.S. Dep't

Just. (July 3, 2010).[3]

12.     Title III of the ADA requires that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

13.     Discrimination on the basis of disability can occur, generally, through a denial of the opportunity to participate in or benefit from goods, services, facilities, privileges, advantages, or accommodations (42 U.S.C. § 12182(b)(1)(A)(i)); from affording goods, services, facilities, privileges, advantages, or accommodations that are not equal to those afforded to other individuals (42 U.S.C. § 12182(b)(1)(A)(ii)); from providing goods, services, facilities, privileges, advantages, or accommodations that are separate from those provided to other individuals (42 U.S.C. § 12182(b)(1)(A)(iii)); or from utilizing methods of administration that have the effect of discriminating on the basis of a disability (42 U.S.C. § 12182(b)(1)(D)).

14.     The ADA and its implementing regulations also define prohibited discrimination to include the following: (i) the failure to remove architectural barriers when such removal is readily achievable for places of public accommodation that existed prior to January 26, 1992 (28 C.F.R. § 36.304(a) and 42 U.S.C. § 12182(b)(2)(A)(iv)); (ii) the failure to design and construct places of public accommodation for first occupancy after January 26, 1993, that are readily accessible to and usable by individuals with disabilities (28 C.F.R. § 36.401 and 42 U.S.C. § 12183(a)(1)); and (iii) for alterations to public accommodations made after January 26, 1992, the failure to make alterations so that the altered portions of the public accommodation are readily

---

[3] Available at http://www.ada.gov/regs2010/RIA_2010regs/DOJ%20ADA%20Final%20RIA.pdf

accessible to and usable by individuals with disabilities (28 C.F.R. § 36.402 and 42 U.S.C. § 12183(a)(2)).

15.     The Department of Justice, pursuant to 42 U.S.C. § 12186(b), has promulgated the ADA Accessibility Guidelines ("ADAAG") in implementing Title III of the ADA. There are two active ADAAGs that set forth the technical requirements that a public accommodation must meet in order to be "readily accessible": the 1991 ADAAG Standards, 28 C.F.R. § pt. 36, App. D ("1991 Standards"), and the 2010 ADAAG Standards, 36 C.F.R. § pt. 1191, App. D ("2010 Standards").

16.     Both the 1991 Standards and the 2010 Standards require places of transient lodging, such as hotels, to provide a certain number of accessible sleeping rooms and suites, determined on a sliding scale based on the total number of guest rooms offered. 1991 Standards §§ 9.1.2-3; 2010 Standards §§ 224.2-4.

17.     The number of accessible guest rooms required is as follows:

| Total Number of Guest Rooms Provided | Minimum Number of Required Accessible Rooms Without Roll-in Showers | Minimum Number of Required Accessible Rooms with Roll-in Showers | Minimum Number of Required Rooms with Communication Features (2010 Standards) | Minimum Number of Required Rooms with Communication Features (1991 Standards) |
|---|---|---|---|---|
| 1 to 25 | 1 | 0 | 2[4] | 1 |
| 26 to 50 | 2 | 0 | 4 | 2 |
| 51 to 75 | 3 | 1 | 7 | 3 |
| 76 to 100 | 4 | 1 | 9 | 4 |
| 101 to 150 | 5 | 2 | 12 | 5 |

[4] The 2010 Standards uses a range of Total Number of Guest Rooms Provided of "2 to 25" for communication feature requirements, versus the 1991 Standards' "1 to 25".

| 151 to 200 | 6 | 2 | 14 | 6 |
| 201 to 300 | 7 | 3 | 17 | 7 |
| 301 to 400 | 8 | 4 | 20 | 8 |
| 401 to 500 | 9 | 4 | 22 | 9 |
| 501 to 1000 | 2 percent of total | 1 percent of total | 5 percent of total | 2 percent of total |
| 1001 and over | 20, plus 1 for each 100, or fraction thereof, over 1000 | 10, plus 1 for each 100, or fraction thereof, over 1000 | 50, plus 3 for each 100 over 1000 | 20, plus 1 for each 100 over 1000 |

*Id.*

18.     In addition to requiring the provision of accessible rooms, the ADA requires hotels to offer accessible guest rooms with an equivalent range of options and amenities that are offered in guest rooms available to individuals without disabilities.

19.     The 1991 Standards require accessible rooms to "be dispersed among the various classes of sleeping accommodations available to patrons of the place of transient lodging. Factors to be considered include room size, cost, amenities provided, and the number of beds provided." 1991 Standards § 9.1.4(1).

20.     The 2010 Standards are substantially similar, and require that accessible rooms "shall be dispersed among the various classes of guest rooms, and shall provide choices of types of guest rooms, number of beds, and other amenities comparable to the choices provided to other guests. Where the minimum number of guest rooms required to comply with 806 is not sufficient to allow for complete dispersion, guest rooms shall be dispersed in the following priority: guest room type, number of beds, and amenities. At least one guest room required to provide mobility features with 806.2 shall also provide communication features complying with 806.3. Not more than 10 percent of guest rooms required to provide mobility features complying with 806.2 shall

be used to satisfy the minimum number of guest rooms required to provide communication features complying with 806.3." 2010 Standards § 224.5.

21.     The Advisory to Section 224.5 states that "[f]actors to be considered in providing an equivalent range of options may include, but are not limited to, room size, bed size, cost, view, bathroom fixtures such as hot tubs and spas, smoking and nonsmoking, and the number of rooms provided."

22.     The Department of Justice explained in its Guidance on the 2010 Standards that the "dispersion requirement is intended to effectuate Congress' directive that a percentage of each class of hotel rooms is to be fully accessible to persons with disabilities. *See* H.R. Rep. No. 101-485 (II) at 391. Accordingly, the promise of the ADA in this instance is that persons with disabilities will have an equal opportunity to benefit from the various options available to hotel guests without disabilities, from single occupancy guest rooms with limited features (and accompanying limited price tags) to luxury suites with lavish features and choices."

23.     The ADA requires reasonable modifications in policies, practices, or procedures when necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the public accommodation can demonstrate that making such modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

24.     The remedies and procedures set forth at 42 U.S.C. § 2000a-3(a) are provided to any person who is being subjected to discrimination on the basis of disability or who has reasonable grounds for believing that such person is about to be subjected to discrimination in violation of 42 U.S.C. § 12183. 42 U.S.C. 12188(a)(1).

## JURISDICTION AND VENUE

25.     This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188.

26.     Plaintiff's claims asserted herein arose in this judicial district, and Defendants do substantial business in this judicial district.

27.     Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2) in that this is the judicial district in which a substantial part of the events and/or omissions at issue occurred.

## PARTIES

28.     Plaintiff Bartley M. Mullen, Jr. is, and at all times relevant for purposes of this action was, a resident of Beaver, Pennsylvania.

29.     Plaintiff is a person with double, above-the-knee leg amputations, who uses a wheelchair for mobility. As a result of this mobility disability, Plaintiff is substantially limited in one or more major life activities, particularly with ambulation.  Plaintiff is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2), and the regulations implementing the ADA set forth at 28 C.F.R. §§ 36.101 et seq.

30.     Plaintiff is both a tester in this litigation and a consumer who wishes to access Defendant's goods and services.  *See, e.g., Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447, 457 (4th Cir. 2017); *Civil Rights Educ. & Enf't Ctr. v. Hosp. Props. Tr.,* 867 F.3d 1093, 1102 (9th Cir. 2017); *Colo. Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1211-12 (10th Cir. 2014); *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1334 (11th Cir. 2013); *see also Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372-74 (1982).

31.     Defendant Red Lion Hotels Corporation is a Washington corporation, and is headquartered at 1550 Market St. #350, Denver, Colorado 80202.

9

32.     Defendant Red Lion Hotels Franchising, Inc. is a Washington corporation, and is headquartered at 1550 Market St. #350, Denver, Colorado 80202.

## FACTUAL ALLEGATIONS

I.     **Defendants Deny Individuals with Disabilities the Full and Equal Enjoyment of Defendant's Goods, Services, Facilities, Privileges, Advantages, and Accommodations.**

33.     Plaintiff travels from time-to-time in and around the western Pennsylvania region, and while traveling, he prefers to stay at a hotel. Plaintiff requires a mobility-accessible guest room to accommodate his needs as an individual with a mobility disability.

34.     In the spring of 2019, Plaintiff attempted to book a mobility-accessible room at Defendants' hotel located at 8858 University Blvd, Coraopolis, Pennsylvania 15108 (the "Subject Hotel").

35.     The Subject Hotel offers guest rooms with bed sizes ranging from full to king size, as well as amenities and options such as rooms with refrigerators, microwaves, recliners, desks, and smoking preferences. On information and belief, there are approximately 108 guest rooms available at the Subject Hotel.

36.     Plaintiff wished to stay in an accessible guest room with a king-size bed with all available amenities, including the option to smoke in his room, and he was prepared to pay a premium for such options and amenities.

37.     When Plaintiff attempted to book a smoking-permitted room with a king-size bed at the Subject Hotel, however, Plaintiff discovered through Defendants' online reservation service that Defendants only offer *one* accessible guest room at the Subject Hotel: a non-smoking guest room with two full-size beds. He was unable to determine from the online reservation service whether the accessible guest room included a roll-in shower. When Plaintiff directly called the

Subject Hotel to confirm whether or not there were more accessible rooms and to get information about whether roll-in showers were available, he was informed that there were actually no accessible rooms in the Subject Hotel at all.

38.     Plaintiff was left frustrated and humiliated by the contradicting information, that he could not reserve the type of guest room he was seeking, and that his only option for an accessible guest room, if it even existed, was so limited.

39.     Plaintiff's experience is not isolated. Many of Defendants' hotels do not have the requisite number of accessible rooms, if any at all. And nearly all of Defendants' locations do not offer accessible guest rooms that are dispersed among the various classes of guest rooms offered to guests who do not need an accessible room, and do not provide choices of the type of guest rooms, number of beds, and other amenities comparable to the options provided to guests who do not need an accessible room.

40.     An investigation performed on behalf of Plaintiff confirmed that, in addition to the Subject Property, Defendants' other hotels across the United States fail to offer the requisite number of accessible guest rooms and fail to offer a range of equivalent accessible guest room options and amenities comparable to those offered to other guests. These hotels include, but are not limited to, the following locations:

a)      6101 Wattsburg Rd, Erie, PA 16509;

b)      1460 Harrisburg Pike, Carlisle, PA 17015;

c)      4125 North Front Street, Harrisburg, PA 17110;

d)      830 W Main St, Norristown, PA 19401;

e)      29 East High Street, Pottstown, PA 19464;

f)      512 E. Franklin Street, Media, PA 19063;

g)      1215 S Main St, Greensburg, PA 15601;

h)      347 Suedberg Rd, Pine Grove, PA 17963;

i)      2707 Lincoln Hwy, Feasterville Trevose, PA 19053;

j)      1320 Harrisburg Ave, Lancaster, PA 17603;

k)      147 Gateway Rd, Somerset, PA 15501;

l)      1134 W Valley Ave, Paxinos, PA 17860;

m)      1127 E Hobsonway, Blythe, CA 92225;

n)      910 Corn Product Rd, Corpus Christi, TX 78409;

o)      11206 W Airport Blvd, Stafford, TX 77477;

p)      1505 College Ave, South Houston, TX 77587;

q)      321 N Mustang Rd, Yukon, OK 73099;

r)      9919 Gwenadele Avenue, Baton Rouge, LA 70816;

s)      2340 W Irish Ln, Knob Noster, MO 65336;

t)      1550 Sunset Blvd, Kalispell, MT 59901;

u)      2500 Perry St, Madison, WI 53713;

v)      150 Dussel Dr, Maumee, OH 43537;

w)      8500 Claude Thomas Rd., Franklin, OH 45005;

x)      2700 Highway 82 E, Greenville, MS 38703;

y)      11501 S Cleveland Ave, Fort Myers, FL 33907;

z)      898 West Broad Street, Athens, GA 30601;

aa)     1419 Virginia Ave, Atlanta, GA 30337;

bb)     1823 L Street NW, Washington DC, DC 20036;

cc)     1850 Richland Ave W, Aiken, SC 29801;

dd)  605 Warrenton Rd, Fredericksburg, VA 22406;

ee)  7201 W Broad St, Richmond, VA 23294;

ff)  181 North Main Street, Tropic, UT 84776;

gg)  6361 Dixie Hwy, Bridgeport, MI 48722; and,

hh)  2603 East Main Street, Endwell, NY 13760.

41.     For most of Defendants' hotels, Defendants typically offer a variety of types of guest room options, including but not limited to, rooms with one full-size bed, two full-size beds, one queen-size bed, two queen-beds, one king-size bed, suites with varying amenities, and additional options including but not limited to in-room refrigerators, microwaves, desks, sofas, and smoking or non-smoking preferences.

42.     However Defendants offer minimal accessible guest room options, typically only offering the most basic options that are not comparable to the same choices of guest rooms and amenities provided to guests who do not need an accessible guest room.

43.     For example, of the investigated hotels listed above, ten locations, or approximately 29%, offer at least two types of guest room options for guests who do not need accessible rooms. The remaining 25 locations, or approximately 71% of all locations, offer three or more types of guest room options for guests who do not need accessible rooms.

44.     With respect to accessible guest rooms, however, Defendants offer dramatically less options. For example, of the investigated hotels listed above: 17 locations, or approximately 49%, offer only one type of accessible guest room; 6 locations, or approximately 17%, offer two types of accessible guest rooms; and no locations offer three or more types of accessible guest rooms. Of the guest room options and amenities offered, all were limited to the most basic features, typically excluding smoking options and amenities such as desks and sofas.

45.     None of the investigated hotels offered the requisite number of accessible guest rooms required relative to the total number of guest rooms offered.

46.     Additionally, of the investigated hotels, at least 23 of the locations are required to offer at least one accessible guest room with an accessible roll-in shower. Only five locations of the investigated hotels offered the requisite number of guest rooms with accessible roll-in showers.

47.     There were 12 locations, or approximately 34%, of the investigated hotels that failed to offer any accessible guest rooms.

**II.     Defendants Exercise System-Wide Control over Individual Hotel Operations.**

48.     Defendants are engaged in the ownership, management, franchising, operation, and development of hotels throughout the United States, including, upon information and belief, approximately 1,327 hotels across the United States.

49.     Defendants employ centralized policies, practices, and procedures with regard to the design, construction, alteration, maintenance, and operation of their hotels. Defendants have the right to control all of their hotels, including their franchised hotels.

50.     Although many of Defendants' hotels are franchised to individual hotel operators, Defendants exercise extensive system-wide control of individual hotel operations.

51.     At the organizational level, Defendant Red Lion Hotels Corporation is the parent company of Defendant Red Lion Hotels Franchising Inc., and both provide certain services to franchisees including but not limited to operational services, billing, marketing, reservations, new constructions and renovations assistance, and customer services.[5]

---

[5] Red Lion Hotels Franchising, Inc., *Americas Best Value Inn Franchise Disclosure Document* ("FDD") (March 2019); *see also* Red Lion Hotels Franchising, Inc., *Knights Inn Franchise Disclosure Document* (March 2019).

52. According to Defendants' latest franchise disclosure documents:

   a) Franchisees are required to strictly follow "Brand Standards" that Defendants unilaterally impose: "We and our affiliates own a special system related to the operations, marketing, and distribution of information pertaining to hotels under the Brand. The Brand includes all of our mandatory policies, procedures, specifications, standards, operating procedures, service standards and rules we periodically prescribe for operating a hotel under the Brand (the 'Brand Standards')… all of which may be further revised and developed by us or our affiliates." FDD at 74.

   b) Prior to the opening of a new franchised hotel, Defendants issue and require compliance with "property improvement plans" that "sets forth a list of items [the franchisee] must perform to conform [its] Hotel to [the] Brand Standards prior to the Opening Date… as a condition of approval". *Id.* at 75.

   c) Once a hotel has been opened, Defendants can require franchisees to expend resources to comply with the Brand Standards: "During the term of the Franchise Agreement and any term extensions, we may require you to make additional expenditures and investments to maintain your Hotel in accordance with the Brand Standards and to remove any deficiencies in your Hotel's operations." FDD at 31 and 75-76.

   d) Defendants provide franchisees operational guidance, standard specifications and procedures, marketing services, and reservation services, among other services. *Id.* at 33-34.

15

e)   Defendants closely monitor franchisee operations, including through the review and monitoring of internally-conducted self-assessments, guest reviews, online reviews, feedback from vendors, and other sources. If Defendants "become concerned, based on guest complaints, online reviews, or otherwise, about the condition of our Hotel or the services it offers… then we may arrange a visit to your Hotel to undertake improving its online reputation…" *Id.* at 76.

f)   Defendants rely on and provide to franchisees architectural and interior design standards for new constructions. Renovations are similarly subject to refurbishment, remodel, and modification requirements set forth in the Brand Standards. *Id.* at 86.

g)   For new constructions, Defendants require the submission of design and construction documents for Defendants' review and approval. *Id.* at 33 and 110.

h)   For renovations, Defendants similarly require the submission of detailed information, including the state of the property to be renovated, the year it was built, and the number of guest rooms and suites to be offered. *Id.* at 126.

i)   Defendants require franchisees to strictly follow operational requirements, including ensuring that descriptions of the franchised hotels' accessible amenities and features, are provided to Defendants. *Id.* at 87.

j)   Defendants require franchisees "to certify to [franchisor] (via an architect, general contractor, or recognized ADA standards consultant reasonably acceptable [to franchisor]), on a form satisfactory to [franchisor], that the Property is ADA compliant." *Id.* at 88.

53.     In the past, Defendants have implemented system-wide changes to their network of hotels under a variety of circumstances. For example, in 2006, a system-wide renovation program was implemented to update all guests rooms in Defendants' hotel network;[6]

54.     Despite Defendants' demanding standards for uniformity and quality for all of their hotels, and the fact that Defendants oversee and inspect individual hotels on a regular basis and require those hotels to implement changes necessary to fix existing problems, Defendants continue to operate and permit their hotels to remain in violation of the ADA.

**III.    Defendants' Discrimination has Injured Plaintiff and Individuals with Disabilities.**

55.     As a result of Defendants' non-compliance with the ADA, Plaintiff's right to full, equal and non-discriminatory access to Defendants' goods, services, facilities, privileges, advantages, and accommodations has been denied.

56.     Defendants' failure to provide accessible guest rooms dispersed among the various classes of guest rooms comparable to the choices provided to other guests, infringes Plaintiff's right to travel free of discrimination.

57.     Plaintiff has suffered, and continues to suffer, frustration, loss of independence, and humiliation because of Defendants' inaccessible hotels and Defendants' discriminatory practices, policies, and procedures. By continuing to operate their hotels with discriminatory conditions, Defendants contribute to Plaintiff's sense of segregation, and deprive Plaintiff of the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations available to other members of the public.

---

[6] "Red Lion Hotels Corporation Puts Final Touches on Rooms Renovations; Enters Peak Travel Season with Upgraded Hotel Network" (June 29, 2006), *available at* http://ir.redlion.com/index.php/news-releases/news-release-details/red-lion-hotels-corporation-puts-final-touches-rooms-renovations (last accessed August 12, 2019).

58.     Plaintiff will be deterred from returning to Defendants' hotels so long as Defendants' hotels remain non-compliant, and so long as Defendants continue to employ the same policies and practices that have led, and in the future will lead, to inaccessibility, discriminatory conditions, and segregating individuals with disabilities.

59.     As an individual with a mobility disability who is dependent upon a wheelchair, Plaintiff is directly interested in whether public accommodations, like Defendants' hotels, are fully accessible to individuals with mobility-related disabilities.

60.     Without injunctive relief, Plaintiff will continue to be unable to fully and equally access Defendants' hotels in violation of Plaintiff's rights under the ADA.

61.     As set forth herein, Defendants' policies, practices, and procedures are inadequate in that Defendants' hotels are operated in violation of the accessibility requirements of Title III of the ADA.

62.     Absent a change in Defendants' corporate policies and practices, discrimination and unequal treatment of individuals with disabilities are likely to reoccur in Defendants' hotels.

63.     Accordingly, Plaintiff seeks an injunction to modify the policies and practices that have created or allowed, and will create or allow, the limited, unequal and discriminatory provision of Defendants' goods, services, facilities, privileges, advantages, and accommodations to individuals with disabilities.

## CLASS ALLEGATIONS

64.     Plaintiff brings this action under Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure individually and on behalf of the following classes:

a.  All persons with qualified disabilities who have attempted, or will attempt, to patronize any of Defendants' hotels in the United States and have, or will have, experienced discrimination because of Defendants' failure to provide an equivalent range of guest room choices available to other guests.

b. All persons with qualified disabilities who have attempted, or will attempt, to patronize any of Defendants' hotels in Pennsylvania and have, or will have, experienced discrimination because of Defendants' failure to provide an equivalent range of guest room choices available to other guests.

65. <u>Numerosity</u>: The class described above is so numerous that joinder of all individual members in one action would be impracticable. The disposition of the individual claims of the respective class members through this class action will benefit both the parties and this Court, and will facilitate judicial economy.

66. <u>Typicality</u>: Plaintiff's claims are typical of the claims of the members of the class. The claims of Plaintiff and members of the class are based on the same legal theories and arise from the same unlawful conduct.

67. <u>Common Questions of Fact and Law</u>: There is a well-defined community of interest and common questions of fact and law affecting members of the class in that they all have been and/or are being denied their civil rights to full and equal access to, and use and enjoyment of, Defendants' facilities and/or services due to Defendants' failure to make its facilities fully accessible and independently usable as above described. The questions of law and fact that are common to the class include, but are not limited to:

a. Whether Defendants own, operate, and/or control places of public accommodation subject to Title III of the ADA and its implementing regulations;

b. Whether Defendants provide accessible guest rooms that are dispersed among the various classes of guest rooms offered by Defendants;

c. Whether Defendants provide choices of types of accessible guest rooms and amenities equivalent to the choices offered to guests who do not require an accessible room;

d. Whether Defendants' policies and practices discriminate against Plaintiff and putative class members in violation of Title III of the ADA and its implementing regulations.

19

68.     <u>Adequacy of Representation</u>: Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the members of the class. Plaintiff will fairly, adequately, and vigorously represent and protect the interests of the members of the class, and he has no interests antagonistic to the members of the class. Plaintiff has retained counsel who are competent and experienced in the prosecution of class action litigation, generally, and who possess specific expertise in the context of class litigation under the ADA.

69.     Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the class as a whole.

## CAUSE OF ACTION

### Violations of 42 U.S.C. §§ 12181, *et seq.*

70.     Plaintiff incorporates by reference the allegations contained in all prior paragraphs as if set forth fully herein.

71.     Title III of the ADA applies to Defendants because Defendants own, lease (or lease to), operate or have the right to control places of public accommodation.

72.     Defendants have failed, and continue to fail, to provide individuals with disabilities with full and equal enjoyment of Defendants' hotels. 42 U.S.C. § 12182(a).

73.     Pursuant to 42 U.S.C. § 12182(a), Defendants have discriminated against Plaintiff and the class on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of Defendant's hotels by failing to offer individuals with disabilities a range of guest room options equivalent to those offered to other customers.

74.     Defendants have further failed to provide facilities that are readily accessible to, and independently usable by, individuals with mobility disabilities by failing to provide the requisite number of accessible rooms, including rooms with roll-in showers, required under the ADAAG. 42 U.S.C. §§ 12183(a)(1) – (2).

75.     Defendants' failure to make reasonable modifications in policies, practices, and procedures to afford the goods, services, facilities, privileges, advantages, and accommodations offered by Defendants to individuals with disabilities is discriminatory and in violation of the ADA, 42 U.S.C. § 12182(b)(2)(A)(ii).

76.     Defendants' conduct is ongoing and continuous, and Plaintiff has been harmed by Defendants' conduct.

77.     Unless Defendants are restrained from continuing their ongoing and continuous course of conduct, Defendants will continue to violate the ADA and will continue to inflict injury upon Plaintiff and the class.

78.     Given that Defendants have discriminated against Plaintiff and the class on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations offered by Defendants to individuals without disabilities, Plaintiff invokes his statutory rights to declaratory and injunctive relief, as well as costs and attorneys' fees.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the members of the class, prays for:

a.     A declaratory judgment that Defendants are in violation of the specific requirements of Title III of the ADA, and the relevant implementing regulations of the ADA, in that Defendants have denied Plaintiff and the class full and equal access to Defendants' hotels by failing to provide accessible guest rooms dispersed

among the various classes of guest rooms, with equivalent options and amenities offered to other guests;

b.   A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 C.F.R. § 36.501(b) that directs: (i) Defendants to change their policies and practices necessary to afford all offered goods, services, facilities, privileges, advantages, and accommodations to individuals with disabilities in full compliance with the requirements set forth in the ADA, and its implementing regulations, so that Defendants' hotels are fully accessible to, and independently usable by, individuals who use wheelchairs, scooters or other mobility devices; (ii) Defendants take all steps necessary to bring their hotels into full compliance with the ADA's requirements so that Defendants' hotels' guest rooms, including guest room showers, are fully accessible to, and independently usable by, individuals who use wheelchairs or scooters; and (iii) Plaintiff shall monitor Defendants' hotels to ensure that the injunctive relief ordered above remains in place.

c.   An Order certifying the classes proposed by Plaintiff, naming Plaintiff as class representative, and appointing his counsel as class counsel;

d.   Payment of costs of suit;

e.   Payment of reasonable attorneys' fees, pursuant to 42 U.S.C. § 12205 and 28 C.F.R. § 36.505; and,

f.   The provision of whatever other relief the Court deems just, equitable, and appropriate.

Dated: August 12, 2019                                     Respectfully submitted,

                                                          */s/ R. Bruce Carlson*
                                                          R. Bruce Carlson
                                                          Kelly K. Iverson
                                                          Bryan A. Fox
                                                          **CARLSON LYNCH, LLP**
                                                          1133 Penn Avenue, 5th Floor
                                                          Pittsburgh PA, 15222
                                                          (412) 322-9243 (Tel.)
                                                          bcarlson@carlsonlynch.com
                                                          kiverson@carlsonlynch.com
                                                          bfox@carlsonlynch.com

                                                          *Attorneys for Plaintiff*